# 10-3560-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

EMIL SZAFRAN,

*Plaintiff-Appellant,*

—against—

SANDATA TECHNOLOGIES, INC.,

*Defendant-Appellee,*

SANDATA HOME HEALTH SYSTEMS, INC., SANDATA ACQUISITION CORP., BERT BRODSKY, individually and as Chief Executive Officer and principle owner of the corporate defendants,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE

MILLER & WRUBEL P.C.
570 Lexington Avenue
New York, New York 10177
(212) 336-3500

*Attorneys for Defendant-Appellee*

# CORPORATE DISCLOSURE STATEMENT
# PURSUANT TO RULE 26.1

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and to enable judges of the Court to evaluate possible disqualification or recusal, the undersigned attorney of record for defendant-appellee Sandata Technologies, Inc., hereby certifies, as of April 5, 2011, that it has no parent corporation and no publicly held corporation which owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

Table of Authorities ........ v

PRELIMINARY STATEMENT ........ 1

COUNTERSTATEMENT OF QUESTIONS PRESENTED ........ 2

COUNTERSTATEMENT OF FACTS ........ 3

A. The Parties ........ 3

B. The Consulting Agreement ........ 4

C. Szafran's Services and Compensation ........ 5

D. The 2005 Trial and Appeal ........ 6

E. The July 2008 Trial and Aftermath ........ 7

F. The Judgment and Appeal ........ 10

SUMMARY OF ARGUMENT ........ 11

I. THE DISTRICT COURT PROPERLY GRANTED A NEW TRIAL ON SZAFRAN'S DAMAGE CALCULATION ........ 13

A. The Standard of Review of the Grant of a New Trial Is Abuse of Discretion ........ 13

B. The District Court Did Not Err in Granting a New Trial Where Szafran Failed to Calculate Damages Based on "Revenues Received" ........ 14

C. Szafran's Interpretation of "Revenues Received" to Mean "Revenues Billed" Would Render Meaningless Other Contract Provisions ....................18

D. To Create an Ambiguity Where None Exists, Szafran Impermissibly Relies on Parol Evidence and Claims Contract Modification Occurred ....................20

1. Parol Evidence Does Not Create an Ambiguity ....................21

2. Szafran Failed to Show the Parties Modified the Consulting Agreement ....................22

II. THE DISTRICT COURT PROPERLY DISMISSED SZAFRAN'S *QUANTUM MERUIT* CLAIM ....................26

A. Standards of Review ....................26

1. The Standard of Review for When a Court May Declare a Jury to be Advisory Is Abuse of Discretion ....................26

2. The Standard of Review of the District Court's Findings and Conclusions Is Clear Error ....................26

B. The District Court Properly Found the Jury Was Advisory on Szafran's *Quantum Meruit* Claim ....................27

C. The District Court Properly Dismissed Szafran's *Quantum Meruit* Claim ....................29

1. The Court Did Not Err in Finding that Szafran's Work on the Town Project Was Covered by the Consulting Agreement ....................29

2. The District Court Did Not Commit Clear Error in Finding that Szafran Did Not Have a Reasonable Expectation of Compensation ....................31

D. Sandata Was Not Judicially Estopped from Asserting that the Agreement Covered Szafran's *Quantum Meruit* Claim ....... 35

III. THE DISTRICT COURT PROPERLY DISMISSED SZAFRAN'S LABOR LAW CLAIM....... 36

A. The Standard of Review Is *De Novo* ....... 36

B. Szafran's Labor Law Claim Was Not Before the District Court or Is Time Barred ....... 36

C. Szafran's Labor Law Claim Is Barred Because He Did Not Prove His Claim Met the Statutory Language....... 38

CONCLUSION....... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.,
404 F.3d 566 (2d Cir. 2005) ....................27

Alexander & Alexander Serv., Inc. v. These Certain Underwriters at Lloyd's, London, Eng.,
136 F.3d 82 (2d Cir. 1998) ....................20

Auldridge v. Modesto Irrigation Dist.,
2007 WL 2500438 (E.D. Cal. Aug. 30, 2007)....................16

Ballard v. Parkstone Energy, LLC,
522 F. Supp.2d 695 (S.D.N.Y. 2007) .................... 23, 25

Beal Savings Bank v. Sommer,
8 N.Y.3d 318 (2007).................... 18, 20

Brainard v. N.Y. Central RR. Co.,
242 N.Y. 125 (1926)....................24

Breed v. Ins. Co. of N. Am.,
46 N.Y.2d 351 (1978)....................15

Brennan v. Murphy & Walsh Assoc., Inc.,
234 A.D.2d 636 (3d Dep't 1996)....................17

Ceraso v. Motiva Enters., LLC,
326 F.3d 303 (2d Cir.2003) ....................34

Commerce Funding Corp. v. Comprehensive Habilitation Svs., Inc.,
2005 WL 447377 (S.D.N.Y. Feb. 24, 2005) ....................23

Dallas Aerospace, Inc. v. CIS Air Corp.,
352 F.3d 775 (2d Cir. 2003) ....................23

DeLuca v. Accessit Group, Inc.,
695 F. Supp.2d 54 (S.D.N.Y. 2010) ....................38

DiBella v. Hopkins,
187 F. Supp.2d 192 (S.D.N.Y. 2002) ....................34

Eagleston v. Guido,
41 F.3d 865 (2d Cir. 1994) ....................36

Empire Props. Corp. v. Mfrs. Trust Co.,
288 N.Y. 242 (1942) ....................18

Eragen Biosciences, Inc. v. Nucleic Acids Licensing LLC,
540 F.3d 694 (7th Cir. 2008) ....................17

Estate of Stewart v. C.I.R.,
617 F.3d 148 (2d Cir. 2010) ....................34

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
375 F.3d 168 (2d Cir. 2004) .................... 15, 21

Freedom Holdings, Inc. v. Cuomo,
624 F.3d 38 (2d Cir. 2010) ....................26

Golden Pac. Bancorp v. FDIC,
2002 WL 31875395 (S.D.N.Y. Dec. 26, 2002) ....................27

Gordon v. Vincent Youmans, Inc.,
358 F.2d 261 (2d Cir. 1965) ....................24

Green v. City of New York,
359 Fed. Appx. 197 (2d Cir. 2009) ....................13

Greenfield v. Philles Records, Inc.,
98 N.Y.2d 562 (2002) ....................21

Hugo Boss Fashions, Inc. v. Fed. Ins. Co.,
252 F.3d 608 (2d Cir. 2001) .................... 15-16

In re Circuit City Stores, Inc.,
432 B.R. 225 (E.D. Va. 2010) .................... 17-18

JA Apparel Corp. v. Abboud,
568 F.3d 390 (2d Cir. 2009) ....................15

Kass v. Kass,
91 N.Y.2d 554 (1998) ....................22

Kreiss v. McCown De Leeuw & Co.,
131 F. Supp.2d 428 (S.D.N.Y. 2001) ....................32

LaGuardia Assoc. v. Holiday Hospitality Franchising, Inc.,
92 F. Supp.2d 119 (E.D.N.Y. 2000) ....................25

LaSalle Nat'l Bank v. Nomura Asset Cap. Corp.,
424 F.3d 195, 206 (2d Cir. 2005) .................... 20, 21

Manley v. AmBase Corp.,
337 F.3d 237 (2d Cir. 2003) .................... 13, 14

Merex A.G. v. Fairchild Weston Sys.,
29 F.3d 821 (2d Cir. 1994) .................... 26, 27, 28

Metropolitan West Waste Mgmt., LLC v.
Shenkman Capital Mgmt., Inc.,
2005 WL 1963943 (S.D.N.Y. Aug. 16, 2005)....................22

Mid-Hudson Catskill Rural Migrant Ministry, Inc. v.
Fine Host Corp.,
418 F.3d 168 (2d Cir. 2005) ....................31

New Hampshire v. Maine,
532 U.S. 742 (2001)....................35

New Windsor Volunteer Ambulance Corps., Inc. v. Meyers,
442 F.3d 101 (2d Cir. 2006) ....................30

People v. Taconic Tel. Corp.,
87 A.D.2d 737 (3d Dep't 1982).................... 16-17

Photopaint Techs., LLC v. Smartlens Corp.,
335 F.3d 152 (2d Cir. 2003) ....................16

R.B. Ventures, Ltd. v. Shane,
112 F.3d 54 (2d Cir. 1997) ....................30

Ragin v. Harry Macklowe Real Estate Co.,
6 F.3d 898 (2d Cir. 1993) .................... 26-27, 32

Realite v. Ark Restaurants Corp.,
7 F. Supp.2d 303 (S.D.N.Y. 1998) ....................38

Reed v. Knollwood Park Cemetery, Inc.,
441 F. Supp. 1144 (E.D.N.Y. 1977) .................... 24-25

Revson v. Cinque & Cinque, P.C.,
221 F.3d 59 (2d Cir. 2000) ....................31

RLS Associates v. United Bank of Kuwait PLC,
380 F.3d 704 (2d Cir. 2004) ....................25

Robotic Vision Sys., Inc. v. Gen. Scanning, Inc.,
1997 WL 1068696 (E.D.N.Y. Sept. 8, 1997) ....................23

Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.,
486 F.2d 114 (5th Cir.1973) ....................27

Song v. Ives Labs., Inc.,
957 F.2d 1041 (2d Cir. 1992) ....................13

Specialty Malls of Tampa, Inc. v. Riverbank Landscape, Ltd.,
2004 WL 1620887 (S.D.N.Y. July 19, 2004) ....................34

Strauss v. Credit Lyonnais, S.A.,
2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006) ....................17

Super v. Abdelazim,
139 A.D.2d 863 (3d Dep't 1988) .................... 34-35

System Devel. Corp. v. United States,
531 F.2d 529 (Ct. Cl. 1976) ....................39

Szafran v. Sandata Technologies, Inc.,
205 Fed. Appx. 864 (2d Cir. 2006) .................... 1, 2, 6-7, 35, 37

United States Naval Inst. v. Charter Communications, Inc.,
936 F.2d 692 (2d Cir.1991) ....................26

W.W.W. Assoc. v. Giancontieri,
77 N.Y.2d 157 (1990) ....................22

Westmoreland Coal Co. v. Entech, Inc.,
100 N.Y.2d 352 (2003) ....................18

Zervos v. Verizon N.Y. Inc.,
252 F.3d 163 (2d Cir. 2001) ....................14

**Statutes**

Fed. R. Civ. P. 39(c) ....................28

Fed. R. Civ. P. 50 ....................13

Fed. R. Civ. P. 59 .................... 10, 13

N.Y. Labor Law § 191-a .................... 38-40

N.Y. Labor Law § 198(3) ....................37

New York Labor Law § 191(c).................... 1, 2, 37

New York Labor Law § 191-c ....................2, 3, 8, 12, 36-40

New York Labor Law §191(c)....................6

Rules 50....................10

Section 191-c....................37

**Other Authorities**

Merriam-Webster Dictionary.................... 14-15, 16

Sondak: The Layman's Dictionary of Computer Terminology, Hawthorn Books, Inc. ....................39

**PRELIMINARY STATEMENT**

Appellant Emil Szafran ("Szafran") filed this action over eight years ago. He alleged breach of contract with Appellee Sandata Technologies, Inc. ("Sandata") over the terms of a written consulting agreement (the "Consulting Agreement" – Appendix ("A.") 2196-2204), age discrimination and retaliation, and violation of New York Labor Law § 191(c).[1] There have been two trials.

The first trial lasted four days (the "2005 Trial"). At the conclusion of the 2005 Trial, the District Court (Hon. Leonard Wexler) dismissed Szafran's contract claim. SPA. 10. The District Court permitted the jury to decide the other claims. The jury returned a special verdict in which it found Szafran was an independent contractor, not an employee, of Sandata. Szafran v. Sandata Technologies, Inc., 205 Fed. Appx. 864, 867-68 (2d Cir. 2006) ("Szafran I"); A. 10, Dkt. No. 67.

As a result, the District Court directed entry of judgment dismissing: (i) Szafran's contract claim based on the District Court's *sua sponte* dismissal; and (ii) Szafran's claims for age discrimination, retaliation and violation of New York

---

[1] Szafran's Amended Complaint (A. 28-38) also named Sandata Home Health Systems, Inc., Sandata Acquisition Corp. and Bert Brodsky, Sandata's Chief Executive Officer, as defendants. On July 14, 2008, Szafran stipulated to the dismissal of these defendants. Special Appendix ("SPA.") 1-2; A. 1429-30.

Labor Law § 191(c), based on the jury's special verdict. A. 10, Dkt. No. 66. On appeal, this Court affirmed the jury verdict, but remanded the breach of contract claim for a new trial. Szafran I.

The second trial lasted over two weeks. A. 330-2195. On the second day of the trial, the District Court (Hon. Joanna Seybert) permitted Szafran to add a *quantum meruit* claim based on services performed for the Town of North Hempstead (the "Town Project"). A. 606-15. After the second trial, the District Court: (i) granted Sandata's post-verdict motion for a new trial on damages on the ground that Szafran based his damages calculation on "revenues billed," when the Consulting Agreement used the unambiguous term "revenues received" (SPA. 23-40); and (ii) dismissed Szafran's *quantum meruit* Town Project claim (SPA. 9-21). During the second trial, the District Court dismissed Szafran's claim for Sandata's alleged violation of the New York Labor Law § 191-c because it was "incredibly untimely" and Szafran failed to prove the statutory elements (A. 1423; SPA. 1-2).

Szafran wants this Court to reverse the District Court's findings and conclusions. There is no basis to do so. The judgment (SPA. 48) should be affirmed.

## COUNTERSTATEMENT OF QUESTIONS PRESENTED

1. Did the District Court abuse its discretion in granting Sandata's motion for a new trial on the ground that Szafran calculated commissions based on

"revenues billed," while the Consulting Agreement bases that calculation on "revenues received"?

2. Did the District Court properly dismiss Szafran's *quantum meruit* claim by finding that: (i) the Consulting Agreement covered Szafran's services on the Town Project for which he seeks redress in *quantum meruit*, and (ii) Szafran failed to meet his burden of proving that he had a reasonable expectation of compensation when he rendered services for Sandata on the Town Project?

3. Did the District Court properly dismiss Szafran's claim under New York Labor Law § 191-c where the Labor Law claim: (i) was not timely, and (ii) Szafran failed to prove the elements of that claim?

## COUNTERSTATEMENT OF FACTS

### A. The Parties

During the relevant time period, 1997-2002, Szafran was an independent contractor for Sandata. Sandata was, at all relevant times, a service bureau. A. 739; Appellant's Brief ("Applt. Br.") at 7 (Sandata "is a leading 'service bureau' for homecare agencies"). It principally provided time and attendance and data processing services to home care health care providers. A. 398-99, 1435-37, 1539, 1543.

## B. <u>The Consulting Agreement</u>

On or about May 31, 1997, Jack Szafran, Szafran's brother, and Sandata entered into the Consulting Agreement. A. 2196-2204. Because Szafran had a non-compete clause in his agreement with one of Sandata's competitors, Szafran and Sandata agreed Jack Szafran would be a "nominee" for Szafran on the Consulting Agreement. Applt. Br. at 8. Accordingly, the parties agreed that the Consulting Agreement applied to Szafran's relationship with Sandata. A. 414-24, 767, 1547-49.

Pursuant to the Consulting Agreement, Sandata retained Szafran as an "independent contractor . . . in relation to the development, implementation[,] and support of the automated time and attendance system, home health care systems[,] and such other consulting services as may be required by the Company and agreed to by the Consultant (collectively, the "Services")." A. 2196-2204, ¶ 1.

Sandata agreed to pay Szafran: (i) "[a]s consideration for all services to be rendered and performed under this [Consulting] Agreement," a "Base Consulting Fees" of $125,000 per annum (after the first year) (A. 2197, ¶ 5); and (ii) Commissions based upon what the parties defined as Applicable Revenues and Other Revenues received by Sandata (A. 2197, ¶ 6).

"Applicable Revenues" are "gross revenues received by the Company during the relevant annual period in connection with the Company's home care

data processing services (other than Santrax-related services) rendered to the entities set forth in Schedule B. . ." Id.

"Other Revenues" are:

> gross revenues received by the Company during the relevant annual period from the Consultant's sale of (x) Santrax-related services to the entities set forth on Schedule B and (y) the Company's home care data processing services including Santrax-related services to entities other than the entities set forth on Schedule B.

Id.

The calculation of "gross revenues received" for Applicable Revenues and Other Revenues was after deducting "any (i) sales or other taxes collected or paid by the Company and (ii) refunds made or rebates or credits granted by the Company. . ." Id.

The parties further agreed that Sandata "shall have no obligation to pay Commissions following termination of the term . . ." A. 2197, ¶ 6. The term of the Consulting Agreement was through May 31, 2002. A. 2196, ¶ 2.

The parties agree New York law applies. A. 2199, ¶ 11(b).

## C. Szafran's Services and Compensation

For the term of the Consulting Agreement, Sandata paid Szafran over $1,000,000 in Base Consulting Fees and commissions. A. 730-39. In turn, Szafran helped Sandata sell automated time and attendance and home health care data

processing services to a number of the home health care providers listed on Schedule B to the Consulting Agreement, as well as to other home health care providers. A. 422-25, 1437, 1626. Szafran also agreed to provide, and provided, consulting services as requested by Sandata, such as on the Town Project. A. 617-18, 838-39, 1674.

Sandata did not renew the Consulting Agreement at the end of its five year term. A. 949. Szafran's relationship with Sandata ended on May 31, 2002. A. 949.

**D. The 2005 Trial and Appeal**

On May 28, 2003, Szafran filed a complaint alleging breach of contract. A. 3, Dkt. Nos. 1-2; A. 27-38. Szafran also alleged that Sandata violated New York Labor Law §191(c), and, in violation of federal and state law, discriminated against Szafran because of his age and discriminatorily retaliated against him. A jury trial was held from August 3-8, 2005. A. 9-10, Dkt. Nos. 60-64.

Following the close of evidence in the 2005 Trial, Judge Wexler entered a judgment as a matter of law for Sandata on Szafran's breach of contract claim. The District Court determined that the Consulting Agreement was fraudulent and illegal because Szafran caused his brother to sign the Consulting Agreement in Szafran's place and "Szafran delivered to Sandata the names of his

former customers in breach of his previous consulting agreement" with one of Sandata's competitors. See Szafran I, 205 Fed. Appx. at 866.

The District Court submitted all remaining claims to the jury. The jury found Szafran was an independent contractor, thereby resulting in a defense verdict on all other claims. A. 10, Dkt. Nos. 66-67.

Szafran appealed. A. 76-77. In Szafran I, this Court upheld the jury verdict that Szafran was an independent contractor and did not remand any claim dependent on that finding. Finding "at most a material factual dispute" on the contract issue that made "judgment as a matter of law improper" (205 Fed. Appx. at 867), this Court vacated the entry of judgment on the contract claim and remanded the contract claim for further proceedings consistent with its decision.

**E. The July 2008 Trial and Aftermath**

Following remand, the District Court held a second trial from July 7 to July 22, 2008. In the proposed Pre-Trial Order (A. 233-314), dated July 3, 2008, Szafran identified for the first time a *quantum meruit* claim based upon the Town

Project. A. 234, 1426-27. On the second day of trial, the Court permitted Szafran to include that *quantum* meruit claim. A. 606-16.[2]

On his direct case, Szafran calculated commissions due based on a percentage of: (i) "revenues billed" for sales of home care data processing services; and (ii) amounts received in connection with consulting on the Town Project. A. 2271-2359. It was undisputed that the Town Project did not involve the provision of home care data processing services (A. 595, 934); instead it involved making the Town of North Hempstead "Y2K" compliant. A. 646-47, 1595-96, 2375.

At the close of Szafran's direct case, the District Court dismissed Szafran's Labor Law claim under New York Labor Law § 191-c. It found the Labor Law claim "is incredibly untimely" and Szafran did not "establish[ ] that claim met the required definitions under the Labor Law." A. 1423; SPA 1-2.

At the same time, the District Court made clear that Szafran's damage theory which was based exclusively on "revenues billed," was flawed. It stated:

> But I'm telling you at this point in time, in order to have a breach of contract case, you need to have

[2] In his Brief, Szafran conflates two separate *quantum meruit* claims. Applt. Br. at 38-57. In May 2008, the Court permitted Szafran to try his claim based on the alternate theories of breach of contract and *quantum meruit* if the jury were to find the Consulting Agreement void on the ground of Sandata's defense of illegality or *in pari delicto*. A. 216, 192-98. That alternative *quantum meruit* claim is different from the *quantum meruit* claim based on the Town Project that Szafran first sought to add on the eve of trial. A. 614-15, 2142-45.

> damages that the plaintiff complains of. Under this contract, you don't have that. You don't. You have the premise that is inherently faulty.

A. 1418-19. And:

> Mr. Young, the burden is on Mr. Szafran to establish that he should have gotten these moneys. You used the wrong – and there's no doubt about it. Under the language of the contract, there is nothing to support revenues billed. There is just nothing. There really isn't.

A. 1422.

Nonetheless, the District Court declined to dismiss Szafran's contract claim at that time. A. 1424.

At the end of the trial, Sandata again moved to dismiss Szafran's contract claim. It argued that claim was barred because Szafran based his damages on "revenues billed," and the Consulting Agreement provided for "revenues received." A. 1878-86. The District Court declined to dismiss Szafran's damage claim. Based solely on Szafran's expert's testimony, the District Court held that the term "gross revenues received" was ambiguous and permitted that claim to be resolved by the jury. A. 1909.

The jury rendered a special verdict: (i) awarding Szafran $382,753.00 on his breach of contract claim (SPA. 3, ¶¶ 1, 3); (ii) finding no implied contract to compensate Szafran for sales on the Town Project (SPA. 4, ¶ 6); but (iii)

recommending an award of $194,808.00 for Szafran for his work on the Town Project claim on a *quantum meruit* basis (SPA. 5, ¶¶ 8-9).

The District Court declined to accept the jury's advisory view on the *quantum meruit* claim. After considering the evidence at trial and the parties' proposed findings of fact and conclusions of law, the District Court entered its own findings of fact and conclusions of law. It found in favor of Sandata on Szafran's *quantum meruit* claim. SPA. 9-21.

Sandata timely moved, pursuant to Rules 50 and 59, for judgment as a matter of law or, alternatively, for a new trial on damages. A. 2730-3167.

By Memorandum Decision and Order, dated February 3, 2010 (the "February 3 Order") (SPA. 23-40), the District Court granted in part Sandata's motion for a new trial. It held the Consulting Agreement language of "revenues received" was unambiguous as a matter of law and vacated the jury's damage award "because it was erroneously based on a 'revenues billed' calculation." The District Court ordered a new trial on damages. SPA. 40.

### F. The Judgment and Appeal

Following the February 3 Order, the District Court vacated the Judgment. A. 3288; SPA. 43.

To avoid the need for a third trial on the amount of commissions based on "revenues received," the parties stipulated to an amount, inclusive of

interest, to be the amount of damages if Szafran had calculated commissions based on "revenues received." A. 3295-97; SPA. 44-47. The District Court ordered judgment to be entered. A. 3301; SPA. 48.

Szafran filed a Notice of Appeal. A. 3302-04; SPA. 49-51.

## SUMMARY OF ARGUMENT

Szafran argues the District Court should not have vacated the jury's contract damage award. However, Szafran is incorrect. In granting Sandata's motion for a new trial, the District Court found the jury improperly calculated commissions based upon "revenues billed," while the Consulting Agreement provided for such calculation to be based upon "revenues received" and nowhere mentions "revenues billed." The District Court held the term "revenues received" is unambiguous as a matter of law. See Point I.B, below. Moreover, as correctly found by the District Court, Szafran's interpretation that he was entitled to commissions based on "revenues billed" would render meaningless other provisions of the same Consulting Agreement. See Point I.C, below.

Szafran argues that the term "revenues" may be ambiguous. He does not argue that the word, "received," is ambiguous. The District Court properly rejected Szafran's arguments about ambiguity and that (i) parol evidence should be used to determine the meaning of "revenues received," or (ii) the parties' course of conduct modified the Consulting Agreement. See Point I. D, below.

Szafran also argues the District Court improperly determined that his *quantum meruit* claim concerning the Town Project should be decided by the Court and was not meritorious. The District Court did not abuse its discretion in finding the jury to be advisory on this equitable claim. See Point II.B, below. The District Court did not err either (i) in determining that the Consulting Agreement governed Szafran's compensation, including commissions for the Town Project, or (ii) in finding, based on a preponderance of the credible evidence, that Szafran had no reasonable expectation of being paid commissions for the Town Project. See Point II.C, below. Also, there is no basis for Szafran's claim that Sandata should be judicially estopped from arguing that the Consulting Agreement governed commissions for the Town Project. See Point II.D, below.

Szafran also argues that the District Court erred in dismissing his Labor Law claim. However, the District Court correctly found Szafran's Labor Law claim was "incredibly untimely" where this Court did not mandate the re-trial of that claim and Szafran did not assert a claim under Section 191-c of the New York Labor Law for more than 6 years after he filed his Complaint. See Point III.B, below. The District Court also correctly found Szafran failed to prove that his Labor Law claim fell within the statutory language. See Point III.C, below.

# ARGUMENT

## I.

## THE DISTRICT COURT PROPERLY GRANTED A NEW TRIAL ON SZAFRAN'S DAMAGE CALCULATION

### A. The Standard of Review of the Grant of a New Trial Is Abuse of Discretion

The District Court granted Sandata's motion for a new trial under Fed. R. Civ. P. 59. Review of the granting of a Rule 59 motion is for abuse of discretion. Green v. City of New York, 359 Fed. Appx. 197, 199 (2d Cir. 2009); Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir. 2003). In deciding a motion for a new trial, the District Court is "permitted to examine the evidence through its own eyes * * * [and] grant such a motion even if there is substantial evidence supporting the jury's verdict." Green, 359 Fed. Appx. at 199 (citations and quotations omitted). For a district court to order a new trial under Rule 59(a), it must conclude that "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992) (citations omitted).

This Court will reverse the grant of Rule 59 motion for abuse of discretion when: '"(1) [the District Court's] decision rests on an error of law (such as the application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a

clearly erroneous factual finding – cannot be located within the range of permissible decisions.'" Manley, 337 F.3d at 244-45, quoting Zervos v. Verizon N.Y. Inc., 252 F.3d 163, 169 (2d Cir. 2001) (footnotes omitted).

Here, the District Court's decision is correct as a matter of law and is within the range of permissible decisions.

### B. The District Court Did Not Err in Granting a New Trial Where Szafran Failed to Calculate Damages Based on "Revenues Received"

Szafran calculated his contract damages based on "revenues billed." However, the Consulting Agreement does not use the term, "revenues billed." Instead, in at least four different clauses in the Consulting Agreement, the parties used the term, "revenues received," as the basis to calculate commissions. A. 2197, ¶ 6. To justify his use of a term not found in the Consulting Agreement, Szafran argues that the term "revenues received" is ambiguous and "referred to the time that the Defendant performed, billed and recognized (i.e., posted) the income from the sales of its services." Applt. Br. at 24.

However, in granting a new trial, the District Court properly found that "the contract unambiguously stated that commissions were based on revenues received." SPA. 29-32. The District Court held that "[t]he term 'received' has a definite and clear meaning which a reasonable person would not dispute." It adopted the "plain meaning" set forth in Merriam-Webster Dictionary of "to come

into possession of." SPA. 30-31. The District Court further found that "[p]laintiff did not present any evidence at trial indicating that 'revenues received' meant anything other than its ordinary definition in the sales industry." SPA. 31 (emphasis added).

Consistent with its findings at the close of Szafran's case (A. 1418-23) and at the close of the taking of evidence (A. 1878-1910), the District Court found "'[u]nder the language of the contract, there is nothing to support revenues billed.'" As a result, the District Court correctly held that "the term 'revenues received' in the Consulting Agreement is unambiguous as a matter of law, and the jury should not have been permitted to interpret this language." SPA. 31.

Under New York law, the District Court correctly held that whether a contract is ambiguous is a question of law for the court to decide. SPA. 30. See JA Apparel Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir. 2009); Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 178 (2d Cir. 2004). Contract language is unambiguous when it has "a definite and precise meaning, unattended by danger of misconception in the purport of the … [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Breed v. Ins. Co. of N. Am., 46 N.Y.2d 351, 355 (1978). There is no ambiguity because parties in litigation urge different interpretations of the contract language. See Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 616 (2d

Cir. 2001). "[J]udgment as a matter of law is appropriate if the contract language is unambiguous." Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 160 (2d Cir. 2003) (footnote omitted).

The word "received" is not ambiguous. The dictionary definition is clear: "receive" means "to come into possession of." www.merriam-webster.com/dictionary/receive. In the Consulting Agreement, the parties used the term "received" four times in paragraph 6. The parties did not use the term "billed," "accrued" or "recognized." A. 2197, ¶ 6; A. 1156-58, 1857-58. "Received" does not mean "billed," "accrued," or "recognized."

Courts that have analyzed the word "received" have reached the same conclusion. It is unambiguous. "Received" means when a party "comes into possession of." In Auldridge v. Modesto Irrigation Dist., 2007 WL 2500438, at *3 (E.D. Cal. Aug. 30, 2007), "Taxable Compensation" was defined as an employee's "wages, salaries, fees for professional services, and other amounts received for professional services actually rendered in the course of employment." Id. at *3 (emphasis in original). The court found the word "received" unambiguous because it has a common and ordinary definition. The court applied the Merriam Webster definition.

In People v. Taconic Tel. Corp., 87 A.D.2d 737, 737-38 (3d Dep't 1982), the court concluded that the statutory phrase "revenues received from the

rendition of public service" was "clear and unambiguous," even in the absence of legislative history or case law. Id. at 737. It held that phrase "refers to funds which have been collected from customers for telephone related services." Id. at 738.

In Brennan v. Murphy & Walsh Assoc., Inc., 234 A.D.2d 636 (3d Dep't 1996), the Court had to determine when plaintiff was entitled to incentive compensation consisting of "25% of the gross commissions received by [defendant] which are attributable to [plaintiff's] efforts," which commissions are in excess of the client's retainer. Id. at 637. Plaintiff claimed he was entitled to those commissions when earned, while defendant claimed commissions were due when defendant actually received the payments from its clients. The court held "received" has the "plain and ordinary meaning" of "to take possession or delivery of," citing the Webster dictionary definition. Id. It held for defendant. Cf. Strauss v. Credit Lyonnais, S.A., 2006 WL 2862704, at *16 (E.D.N.Y. Oct. 5, 2006) (involving interpreting the terrorism statute definitions where "collecting" includes "raising and receiving." The Court adopted the Merriam Webster definition of "receiving" as "to come into possession of" and, therefore, must include "passively receiving" funds.); Eragen Biosciences, Inc. v. Nucleic Acids Licensing LLC, 540 F.3d 694, 699-700 (7th Cir. 2008) ("all revenue accruing" is unambiguous; "accrued" does not mean "received"); In re Circuit City Stores, Inc., 432 B.R. 225,

230 (E.D. Va. 2010) ("Panasonic has presented no law from any jurisdiction suggesting that 'received' means anything other than 'having taken into physical possession.' . . . For all the foregoing reasons, the court holds that the definition of 'received' means 'having taken into physical possession.'") (emphasis in original)).

Here, Szafran offered no evidence at trial that "received" has a meaning different from its dictionary definition. SPA. 31. Indeed, on appeal, Szafran ignores the word "received," arguing only definitions of the word "revenue." Applt. Br. at 24-30. Szafran also has offered no law to show that "received" means anything other than to take into physical possession.

### C. Szafran's Interpretation of "Revenues Received" to Mean "Revenues Billed" Would Render Meaningless Other Contract Provisions

It is black letter law that a "written contract 'will be read as a whole and every part will be interpreted with references to the whole; and if possible it will be so interpreted as to give effect to its general purpose.'" Westmoreland Coal Co. v. Entech, Inc., 100 N.Y.2d 352, 358 (2003), quoting Empire Props. Corp. v. Mfrs., 288 N.Y. 242, 248 (1942). The intent of the parties should be gathered from the "four corners" of the contract. Beal Savings Bank v. Sommer, 8 N.Y.3d 318, 324 (2007).

In looking at the "four corners" of the Consulting Agreement, Szafran's interpretation of "revenues received" to be the same as "revenues billed" cannot be accepted without rendering meaningless other provisions of the Consulting Agreement. In paragraph six, "gross revenues received" is determined after Sandata has deducted from the "received" amounts any "(1) sales or other taxes collected or paid by the Company and (2) refunds made or rebates or credits granted by the Company on an arms' length basis." Such calculation cannot be made upon billing because the foregoing deductions are not known at that time. In addition, Sandata issues refunds, rebates and credits after billing. A. 2197, ¶ 6; A. 1316-17, 1555-58, 2611-17.

The District Court correctly found that Szafran's definition of "revenues received" as "revenues billed" is inconsistent with the Consulting Agreement. It wrote as follows:

> [I]n reviewing the Consulting Agreement's four corners, the Court finds that Plaintiff's definition of 'revenues received' is consistent [sic] with the remainder of the Agreement, which states that the Consultant would receive commissions based on revenues received less any sales or other taxes collected by the Company or rebates or credits granted. Commissions based on 'revenues billed' would render the language regarding these deductions superfluous.

SPA. 31 (emphasis added).

Szafran's interpretation would render meaningless the "tax" and "credit" deductions from revenues received and, therefore, must be avoided. See LaSalle Nat'l Bank v. Nomura Asset Cap. Corp., 424 F.3d 195, 206 (2d Cir. 2005) ("[A]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible."); Beal Savings Bank, 8 N.Y.3d at 324 ("A reading of the contract should not render any portion meaningless."). Indeed, the same case law relied upon by Szafran supports the reasoning of the District Court; that is, the determination of whether a contract term is ambiguous takes place "in the context of the entire integrated agreement. . . ." Applt. Br. at 23-24, quoting Alexander & Alexander Serv., Inc. v. These Certain Underwriters at Lloyd's, London, Eng., 136 F.3d 82, 86 (2d Cir. 1998).

### D. To Create an Ambiguity Where None Exists, Szafran Impermissibly Relies on Parol Evidence and Claims Contract Modification Occurred

To avoid the unambiguous language of the Consulting Agreement, Szafran makes two additional arguments. First, he claims that parol evidence shows the parties intended to define "revenues received" as "revenues billed." Applt. Br. at 31-36. Second, Szafran argues that the parties modified the Consulting Agreement by their subsequent course of conduct. Applt. Br. at 36-37. The District Court did not abuse its discretion in rejecting those arguments.

### 1. Parol Evidence Does Not Create an Ambiguity

To define "revenues received" to be the same as "revenues billed," Szafran relies on parol evidence, including the testimony of his damages expert, Sandata's use of generally accepted accounting principles in its financial statements, and practical construction as evidenced by Sandata's payment of commissions on a "billed" basis. Applt. Br. at 24-36.

Under New York law, where a contractual term is unambiguous, intent of the parties must be found from the language of the contract, without resort to extrinsic evidence such as practical construction, the parties' custom or usage or course of dealing. See LaSalle Bank Nat'l Assn., 424 F.3d at 207-08 (where the agreement language can be read in "straightforward" fashion and its "plain meaning" gives "full effect to all of its provisions," it was error for the trial court to rely on extrinsic evidence of the parties' intent, custom or practice in the industry, or the parties' course of dealing). "Typically, the best evidence of intent is the contract itself; if an agreement is 'complete, clear and unambiguous on its face [, it] must be enforced according to the plain meaning of its terms.'" Eternity Global Master Fund Ltd., 375 F.3d at 177, quoting Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002).

Szafran's reliance on Sandata's accrual recordkeeping for financial reporting, Szafran's expert's testimony and payments made after the

commencement of the Consulting Agreement cannot create an ambiguity. "Extrinsic evidence cannot [be used to] create an ambiguity in an agreement." Kass v. Kass, 91 N.Y.2d 554, 566 (1998). As a result, "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." W.W.W. Assoc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990); see also Metropolitan West Waste Mgmt., LLC v. Shenkman Capital Mgmt., Inc., 2005 WL 1963943 at *8 n.23 (S.D.N.Y. Aug. 16, 2005) (rejecting "expert affidavits opining that language and structure . . . either is ambiguous or supports plaintiff's reading as to whether Defaulted Securities were permitted to be sold;" such evidence is extrinsic and is not permissible).

### 2. Szafran Failed to Show the Parties Modified the Consulting Agreement

Szafran also argues that "revenues billed" should be used because the parties' "course of conduct" effected a modification to the Consulting Agreement. Applt. Br. at 36-37. However, the District Court did not err in finding that Szafran failed to prove all elements of a modification through a course of conduct.

For a "course of conduct" to modify a contract, Szafran must prove each element of contract formation: offer, new consideration, acceptance and mutual assent to the modification that is unequivocally referable to the alleged

modification. See Commerce Funding Corp. v. Comprehensive Habilitation Svs., Inc., 2005 WL 447377, at *10 (S.D.N.Y. Feb. 24, 2005).[3]

Szafran failed to meet his burden of proving (i) mutual assent to a modification, and (ii) that is "unequivocally referable to the modification." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 783 (2d Cir. 2003); see also Ballard v. Parkstone Energy, LLC, 522 F. Supp.2d 695, 709 (S.D.N.Y. 2007). Instead, Szafran argues only that modification must exist because Sandata calculated all of his commissions based on the date of Sandata's invoices. Applt. Br. at 37.

Based on the facts, the District Court did not find "mutual assent" which "is unequivocally referable." The record shows that on at least two occasions, in 2000 and again in 2002, Sandata's Executive Vice President, Mr. Freund, informed its bookkeeping department that the commission calculation for Szafran was in error because the bookkeeping department based it on "revenues billed," instead of "revenues received." A. 2597, 2598, 1439-44. The

---

[3] The cases cited by Szafran that a course of conduct can modify a contract are inapposite. Applt. Br. at 36-37. All involved contract modifications to which the parties consented. And in Robotic Vision Sys., Inc. v. Gen. Scanning, Inc., 1997 WL 1068696, at *6 (E.D.N.Y. Sept. 8, 1997), the court did not find modification. The court found that "[t]hese facts are simply insufficient to support a finding that either party – much less both – intended to modify the contract to provide that oral designation alone was sufficient." Id.

documentary evidence also shows that Sandata paid commissions from time to time based on when it received revenues. E.g., A. 2593, 2594, 2596, 1585-86, 1439-44.

Szafran agrees there was no contract entered into after the date of the Consulting Agreement. A. 949. Mr. Brodsky, Sandata's Chairperson, agrees he did not agree to any modification. A. 1585-86, 1549. The District Court's conclusion is not clearly erroneous as facts exist showing "no mutual assent" and no "unequivocable referral."

At most, Szafran points to a mistake. A. 1585-88. A mistake in contract interpretation is not a modification of the contract. See Brainard v. N.Y. Central RR. Co., 242 N.Y. 125, 133-34 (1926) ("The conduct of the parties may fix a meaning to words of undoubtful import. It may not change the terms of a contract. The payments made by the Central were made either through inadvertence or by reason of failure properly to construe the language of the contract. . . . When the instrument is clear in the eye of the law, the error of the parties cannot control its effect."); Gordon v. Vincent Youmans, Inc., 358 F.2d 261, 274 (2d Cir. 1965); Reed v. Knollwood Park Cemetery, Inc., 441 F. Supp. 1144, 1148 (E.D.N.Y. 1977) ("The conduct of the parties in the construction of a contract is relevant only when the words interpreted are of doubtful import, which we do not find to be the case here. The intent of the parties is to be found in the

language used to express such intent, and if the language is unambiguous evidence of the parties' actions and intentions is irrelevant. Thus payments made because of an improper construction of the certificate do not alter the meaning of the certificate.").

Moreover, Szafran failed to offer evidence of new consideration, an essential element of contract formation. See RLS Associates v. United Bank of Kuwait PLC, 380 F.3d 704, 709-10 (2d Cir. 2004) ("The same [consideration] requirement applies in the case of an amendment to a contract."); Ballard, 522 F. Supp.2d at 709-10 ("For a contract to be modified by a course of conduct, 'any change in an existing contract must have a new consideration to support it.'"); LaGuardia Assoc. v. Holiday Hospitality Franchising, Inc., 92 F. Supp.2d 119, 129 (E.D.N.Y. 2000) ("Plaintiff's contention of an oral or course-of-conduct modification . . . fails as a matter of law from lack of consideration."). The absence of such evidence provides further support that some payments were made based on a mistake, not a new contractual agreement.

Sandata's mistake in from time to time paying commissions to Szafran based on the date of billing cannot change the language of the contract or its effect. The District Court's rejection of Szafran's view of the underlying facts was not an abuse of discretion.

## II.

## THE DISTRICT COURT PROPERLY DISMISSED SZAFRAN'S *QUANTUM MERUIT* CLAIM

### A. Standards of Review

#### 1. The Standard of Review for When a Court May Declare a Jury to be Advisory Is Abuse of Discretion

The standard of review of the District Court's determination that the jury was advisory is for abuse of discretion. See Merex A.G. v. Fairchild Weston Sys., 29 F.3d 821, 824 (2d Cir. 1994).

#### 2. The Standard of Review of the District Court's Findings and Conclusions Is Clear Error

For reviewing the District Court's conclusions of law, the Court's standard of review is *de novo*. Freedom Holdings, Inc. v. Cuomo, 624 F.3d 38, 49 (2d Cir. 2010). When a district court sits as a factfinder, this Court will reverse its findings only if they are clearly erroneous. See United States Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 697 (2d Cir.1991). An advisory jury's recommendations do not change that standard. As this Court held:

> [A District Court] is not bound by the findings of the advisory jury, which it is free to adopt in whole or in part or to totally disregard. . . . Hence our concern with the trial court's findings is not whether they dovetail perfectly with the jury verdict. We are concerned rather with whether those findings pass muster under the "clearly erroneous" standard of [Fed.R.Civ.P.] 52(a). . . .

Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 907 (2d Cir. 1993), quoting Sheila's Shine Prods., Inc. v. Sheila Shine, Inc., 486 F.2d 114, 122 (5th Cir.1973) (citation omitted).

### B. The District Court Properly Found the Jury Was Advisory on Szafran's *Quantum Meruit* Claim

Szafran argues the District Court erred in holding the jury verdict on his Town Project *quantum meruit* claim to be advisory and Szafran was prejudiced by the District Court doing so after the close of evidence. Applt. Br. at 52-56.

Szafran's arguments are erroneous. *Quantum meruit* claims are equitable. Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603 (2d Cir. 2005) (referring to "the equitable doctrine of *quantum meruit*"). Equitable claims are triable by the Court, and there is no constitutional or other right to a jury trial on them. See Merex, 29 F.3d at 826.

The District Court properly held that Szafran's *quantum meruit* claim for the Town Project "is an equitable claim that does not entitle a party to trial by jury." SPA. 16, quoting Golden Pac. Bancorp v. FDIC, 2002 WL 31875395, at *15 (S.D.N.Y. Dec. 26, 2002). As a result, the District Court held it would submit the Town Project *quantum meruit* claim to the jury for an advisory verdict which would not be binding on the District Court. A. 1895-96; SPA. 16-17. Szafran could have no reasonable belief that the equitable claim would be decided by a

jury. The District Court did not abuse its discretion by declaring the jury's verdict to be advisory.

Nor did the District Court abuse its discretion by the timing of its order. Because the *quantum meruit* claim is equitable, there is no basis for Szafran to claim the District Court, and not a jury, should decide that claim. Moreover, Szafran proposed a claim for *quantum meruit* based on commissions for the Town Project for the first time in the Pre-Trial Order, dated July 3, 2008, the day before trial. A. 232-314.[4] On July 8, 2008, during trial, the District Court granted Szafran's request. A. 614-15, 1426-27.

It is hornbook law that "a Court may determine that a jury verdict will be advisory after the start of trial." SPA. 17. Indeed, the District Court may declare the jury verdict to be advisory at any time. Fed. R. Civ. P. 39(c); Merex, 29 F.3d at 827 (finding the district court "did not abuse its discretion by declaring the jury advisory after the plaintiff rested its case"). There can be no prejudice for Szafran from the District Court's declaration at the end of trial.

---

[4] Szafran asserted a different *quantum meruit* claim before trial. In April 2008, Szafran sought to add a *quantum meruit* claim if, and only if, the jury were to find that the Consulting Agreement were void as a result of Sandata's defense of illegality or *in pari delicto*. A. 192-98. By Order, dated May 2, 2008, the Court granted Szafran's requests to add the foregoing *quantum meruit* claim. A. 216.

## C. The District Court Properly Dismissed <u>Szafran's *Quantum Meruit* Claim</u>

Szafran argues that the District Court erred in holding that the Consulting Agreement covered compensation for the Town Project and Szafran had no reasonable expectation of receiving commissions for his work on the Town Project. Applt. Br. at 45-57. Szafran is incorrect on both counts.

### 1. The Court Did Not Err in Finding that Szafran's Work on the Town Project <u>Was Covered by the Consulting Agreement</u>

The jury entered a special verdict dismissing Szafran's claims for commissions based on the Town Project under an implied contract. SPA. 4, ¶ 6. The jury advised the District Court, however, that Szafran should receive commissions for his work on the Town Project on a *quantum meruit* basis. SPA. 5, ¶¶ 8-9.

The District Court properly declined to follow the jury's advice that Szafran was entitled to *quantum meruit* compensation for his work on the Town Project. SPA. 9-21. After hearing all the evidence, the District Court found that "Plaintiff's services were covered by the parties' Consulting Agreement. Pursuant to the Consulting Agreement, Plaintiff received a base salary for his services, which included consulting services as may be required by the Company and agreed to by the Consultant." SPA. 19.

*Quantum meruit* is not available where there is an enforceable contract that governs the subject matter. See R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 60 (2d Cir. 1997); New Windsor Volunteer Ambulance Corps., Inc. v. Meyers, 442 F.3d 101, 118 (2d Cir. 2006).

The Consulting Agreement is unambiguous. It provides for all the compensation to be paid to Szafran, regardless of what services he would perform. Thus, in the Consulting Agreement, Sandata agreed to pay Szafran "Base Consulting Fees" of $125,000 annually for "all services rendered and to be performed under this Agreement." A. 2197, ¶ 5. "[C]onsulting services" included "services as may be required by the Company and agreed to by the Consultant." A. 2196, ¶ 1. In addition, Sandata agreed to pay Szafran commissions only with respect to revenues received from health care data processing services. A. 2197, ¶ 6. No other revenues received were commissionable. Revenues received from the Town Project were neither "Applicable Revenues" nor "Other Revenues." A. 929-34.

It is undisputed that revenues received from the Town Project were not from health care data processing services. A. 932-35. It also is undisputed that, as Szafran testified, the Consulting Agreement covered his claim for commissions on the Town Project. A. 931-32. As a result, under the clear wording of the Consulting Agreement, Szafran's work on the Town Project was

included in his "Base Consulting Fees," but was not separately compensable by commissions.

Testimonial evidence further supports the District Court's findings. Mr. Brodsky, Sandata's Chairperson (A. 1543), who negotiated the Consulting Agreement with Szafran (A. 1545-63), testified that the "Base Consulting Fees" were for "whatever we asked him to do." A. 1550-51. Szafran agreed. He testified that the Consulting Agreement covered his claim for commissions for the Town Project. A. 930-35.

### 2. The District Court Did Not Commit Clear Error in Finding that Szafran Did Not Have a Reasonable Expectation of Compensation

Based on a preponderance of the credible evidence, the District Court found that Szafran did not render services to Sandata on the Town Project with the reasonable expectation of receiving compensation. SPA. 12-16.

To recover in *quantum meruit* under New York law, a plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005), quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000) (citation and internal quotation marks omitted). The mere expectation of

compensation by a party is not sufficient to merit recovery. Rather there must be a "reasonable expectancy of receiving such compensation." Kreiss v. McCown De Leeuw & Co., 131 F. Supp.2d 428, 437 (S.D.N.Y. 2001).

The parties agree that such determination "is a matter for the trier of fact to determine based on the evidence before it." Applt. Br. at 57.

The District Court rendered findings based on evidence that "[i]t is clear that neither party intended that Plaintiff would receive additional commissions for his work with the Town because Plaintiff's work with the Town was covered by the parties [sic] written agreement." SPA. 20. Specifically, based on its factual findings (SPA. 12-16), the District Court concluded Szafran "began work on the [Town] project and did not request additional compensation for it until the [Town] project had neared completion." Id. The District Court's findings should not be reversed absent clear error. Ragin, 6 F.3d at 907.

There is ample record support for the District Court's factual findings, and no clear error. The record shows Mr. Brodsky, Sandata's Chairperson, was a volunteer on the Town of North Hempstead's Technology Advisory Committee. A. 1595, 1235-39; SPA. 13. Mr. Brodsky discovered the Town was not "Y2K" compliant and alerted the Town of his concerns. A. 1238-39; SPA. 13-14. Because of the potential computer crisis, the Town determined it needed to address "Y2K" compliance and submitted a Request for Proposal to Sandata. SPA. 14; A.

1595-1603, 2452-55. As found by the District Court, the Town awarded Sandata the project. SPA. 14. Szafran admitted that Mr. Brodsky's "prior involvement with the Town [of North Hempstead] and with many members of the Board was certainly helpful." A. 2453.

Further, the record shows Sandata requested, and Szafran agreed, to work on the Town Project. As the District Court found, from the time Szafran started consulting on the Town Project in March 1999 (A. 940, 2366-92) through its near conclusion in November 2000 (A. 2317-18), Szafran "did not request commissions or any other payment for his services on the" Town Project. SPA. 15; A. 1604, 2452-55.

The District Court further found that on November 13, 2000, Szafran, for the first time, requested commissions for his work on the Town Project. SPA. 15; A. 2452-55. Sandata rejected Szafran's request. SPA. 15; A. 936, 2452-55. In response, Szafran did nothing. Through the last day of his consultancy with Sandata in May 2002 (A. 949), Szafran did not ask Mr. Brodsky "or raise the issue of commissions for his work with Town" Project. SPA. 16; A. 935-38, 1604. Szafran also did not complain to Mr. Brodsky or Mr. Freund "about not being compensated for the value of his services on [the Town Project]; he had no conversations with Mr. Brodsky or Mr. Freund regarding commissions for the Town of North Hempstead." SPA. 15, citing A. 2648-49, ¶¶ 28, 31.

Yet, during that same time frame, Szafran "asked for compensation for several other projects." SPA. 16, citing A. 2648-49, ¶¶ 29, 33.

Those findings are not subject to review, absent clear error. Where, as here, there is record support for the findings, there is no clear error. See Estate of Stewart v. C.I.R., 617 F.3d 148, 164 (2d Cir. 2010) ("a conclusion by the reviewing court that it would have reached a different determination had it been considering the evidence as a trier of fact" does not demonstrate clear error).

In arguing that the District Court erred, Szafran proffers his own version of the facts and conclusions about the credibility of Sandata's witnesses. Applt. Br. at 12, 45-51. Szafran's views of the facts and credibility of the witnesses are wholly irrelevant. See Ceraso v. Motiva Enters., LLC, 326 F.3d 303, 316 (2d Cir.2003) ("[T]he fact that there may have been evidence to support an inference contrary to that drawn by the trial court" is insufficient to demonstrate clear error).

Moreover, under the equitable doctrine of *quantum meruit*, Szafran must show "both parties expected that plaintiff would be compensated for his services." Specialty Malls of Tampa, Inc. v. Riverbank Landscape, Ltd., 2004 WL 1620887, at *4 (S.D.N.Y. July 19, 2004), quoting DiBella v. Hopkins, 187 F. Supp.2d 192, 201 (S.D.N.Y. 2002). *Quantum meruit* "does not arise unilaterally upon the furnishing of services and is not available when the services were offered

at no charge; there must be an inferable expectation by both parties that plaintiff would be paid for his services." Super v. Abdelazim, 139 A.D.2d 863, 864 (3d Dep't 1988) (emphasis added). There is no evidence that Sandata intended to pay for Szafran's time spent on the Town Project.

## D. Sandata Was Not Judicially Estopped from Asserting that the Agreement Covered Szafran's *Quantum Meruit* Claim

Szafran argues that Sandata should be judicially estopped from arguing that he should not be compensated for his work on the Town Project. Szafran claims that Sandata "employ[ed] an 180 degree opposite argument" in the 2005 Trial to defeat Szafran's age discrimination claims. Applt. Br. at 30. Although Szafran sets forth at length his judicial estoppel theory (Applt. Br. at 38-45), Szafran fails to identify an inconsistent position taken by Sandata.

For judicial estoppel to apply, "a party's later position must be clearly inconsistent with its earlier position." New Hampshire v. Maine, 532 U.S. 742, 743 (2001) (emphasis added). Here, Sandata's position in the two trials is consistent: Szafran was an independent contractor. Sandata agrees with Szafran that during the 2005 Trial, Sandata not only proffered evidence, but also proved, that Szafran was an independent contractor, not an employee, of Sandata. Szafran I, 205 Fed. Appx. at 867-68. For the trial in 2008, there was no reason to re-argue that Szafran was an independent consultant to Sandata.

As an independent contractor under the Consulting Agreement, Szafran was entitled to the "Base Consulting Fees" if he did nothing or if he agreed to perform consulting services requested by Sandata. Szafran retained the right to accept non-commissionable consulting work from Sandata as part of his "Base Consulting Fees." There is no dispute Szafran agreed to undertake consulting services for the Town Project. There is no inconsistency in the position taken by Sandata.

## III.

## THE DISTRICT COURT PROPERLY DISMISSED SZAFRAN'S LABOR LAW CLAIM

### A. The Standard of Review Is *De Novo*

At the conclusion of Szafran's direct case, the District Court dismissed Szafran's claim under Section 191-c of the New York Labor Law. The review of that dismissal is *de novo*. See, e.g., Eagleston v. Guido, 41 F.3d 865, 872 (2d Cir. 1994).

### B. Szafran's Labor Law Claim Was Not Before the District Court or Is Time Barred

The District Court correctly found that Szafran's claim under Section 191-c of the New York Labor Law was "incredibly untimely." A. 1423.

In the 2005 Trial, Szafran argued he was an employee, not an independent contractor. As a result, Szafran claimed Sandata: (i) discriminated

against him as an employee because of his age; (ii) retaliated against him as an employee because of his age; and (iii) violated Section 191(c) of the New York Labor Law, a section that applies only to employees. The jury disagreed. In its special verdict, the jury found Szafran was an independent contractor.

In Szafran I, this Court did not "disturb the jury's verdict," and vacated and remanded only Szafran's breach of contract claim. Szafran I at 868-69. As a result, Szafran's Labor Law claim under Section 191-c was not properly the subject of the second trial.

Assuming *arguendo* that Szafran's Section 191-c claim was not precluded, it is untimely. In May 2003, Szafran filed his complaint in which he alleged, *inter alia*, Sandata violated the New York Labor Law in failing to pay commissions to Szafran as an employee of Sandata during the term of his Consulting Agreement. A. 28-38. Section 191(c) covers employees, not independent contractors. Section 191-c covers independent contractors. Yet, Szafran did not plead a violation of Section 191-c, even in the alternative, or seek leave to amend his Complaint to add a Section 191-c claim.

Nevertheless, at the second trial, Szafran argued Sandata had violated Section 191-c of the New York Labor Law. A. 233. Szafran's new Labor Law claim is time-barred because Szafran did not assert it until more than six years after the termination of the Consulting Agreement. See N.Y. Labor Law § 198(3);

Realite v. Ark Restaurants Corp., 7 F. Supp.2d 303, 308 n. 4 (S.D.N.Y. 1998) ("plaintiffs in this action are also seeking relief under New York's labor laws, which provide a six year statute of limitations.").

**C. Szafran's Labor Law Claim Is Barred Because He Did Not Prove His Claim Met the Statutory Language**

The dismissal of Szafran's Labor Law claim as "without merit" should be affirmed for the additional reason stated by the District Court that Szafran "had not established that claim met the required definitions under the Labor Law." SPA. 1-2, 41-42; A. 1423.

Section 191-c concerns the payment of commissions "between a principal and a sales representative." In relevant part, the term "[p]rincipal means a person or company engaged in the business of manufacturing, and who (1) manufactures, produces, imports, or distributes a product for wholesale." N.Y. Labor Law § 191-a. Both elements were part of Szafran's burden of proof. See also DeLuca v. Accessit Group, Inc., 695 F. Supp.2d 54, 63-64 (S.D.N.Y. 2010) (dismissing § 191-c claim where plaintiff failed to plead both that defendant was "engaged in the business of manufacturing" and "manufactures, produces, imports, or distributes a product for wholesale").

Szafran did not prove that Sandata "is engaged in the business of manufacturing" or that Sandata "manufactures, produces, imports, or distributes a

product for wholesale." Emphasis added. Nor could he. Sandata was a service bureau, not a manufacturer. A service bureau is "[a]n organization that leases or sells computer time, manpower, or other computational support to the public." System Devel. Corp. v. United States, 531 F.2d 529, 531 (Ct. Cl. 1976), quoting Sondak: The Layman's Dictionary of Computer Terminology, Hawthorn Books, Inc. Szafran defined a "service bureau" as providing data processing services to clients. A. 388-89.

Szafran admitted Sandata provided services. He testified that "Sandata was known to me as a – as the largest competitor in the field of providing data processing services to home care agencies." A. 398; see also A. 429-30 (Szafran explains that Sandata's system did back office processing of time-keeping, scheduling and payroll and generated reports for home health care agencies); A. 388-89. Moreover, in his Brief, Szafran claims that Sandata "is a leading 'service bureau' for homecare agencies." Applt. Br. at 7. Sandata provided data processing services to clients, principally in the area of home health care. Id.

Szafran also failed to adduce proof that Sandata distributed "a product for wholesale." Szafran testified that Sandata distributed its services, not a product, to home health care providers or other consulting clients. There was no proof of any wholesale sales.

Szafran failed in his burden of proving either prong of the definition of "principal," much less both prongs. The District Court properly dismissed Szafran's Labor Law claim.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment in favor of Sandata.

Dated: New York, New York
April 5, 2011

MILLER & WRUBEL P.C.

/s/ Martin D. Edel
Martin D. Edel

570 Lexington Avenue
New York, New York 10022
(212) 336-3500
Facsimile: (212) 336-3555

*Attorneys for Defendant-Appellee*

Of Counsel:

Kenneth Faltischek
John G. Moon

**CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 32(A)(7)**

I hereby certify pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), that the foregoing brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i), specifically, that the foregoing brief contains no more than 14,000 words.

Using Microsoft Word, I performed a word count on the foregoing brief, which totaled 8,544 words. Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this word count includes headings, footnotes, and quotations, but excludes the corporate disclosure statement, table of contents, table of citations and the certificate of compliance.

/s/ Martin D. Edel
Martin D. Edel

Dated: April 5, 2011

# CERTIFICATE OF SERVICE & CM/ECF FILING

10-3560-cv Szafran v. Sandata Technologies, Inc.

I hereby certify that I caused the foregoing Brief for Defendant-Appellee to be served on counsel for Plaintiff-Appellant via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with a Notice of Docket Activity pursuant to Local Appellate Rule 25.1:

Sanford F. Young, Esq.
Law Offices of Sanford F. Young, P.C.
570 Lexington Avenue, 25th Floor
New York 10022
(212) 227-9755

*Attorney for Plaintiff-Appellant*
*Emil Szafran*

I certify that an electronic copy was uploaded to the Court's electronic filing system. One original and five hard copies of the foregoing Brief for Defendant-Appellee were sent to the Clerk's Office By Hand Delivery to:

Clerk of Court
United States Court of Appeals, Second Circuit
United States Courthouse
500 Pearl Street, 3rd floor
New York, New York 10007
(212) 857-8576

on this 6th day of April 2011.

Notary Public:

/s/ Nadia R. Oswald Hamid

**Sworn to me this**

April 6, 2011

NADIA R. OSWALD HAMID
Notary Public, State of New York
No. 01OS6101366
Qualified in Kings County
Commission Expires November 10, 2011

/s/ Thomas L. Burke

THOMAS L. BURKE
Record Press, Inc.
229 West 36th Street, 8th Floor
New York, New York 10018
(212) 619-4949